AO 106 (Rev. 04/10)  Application for a Search Warrant

_____ FILED          _____ ENTERED
_____ LODGED       _____ RECEIVED

# UNITED STATES DISTRICT COURT

FEB 18 2015

for the

Western District of Washington

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)     Case No.  MJ 15 · 65
The Google email account kcreative2014@gmail.com, )
stored at premises owned or operated by Google Inc., )
headquartered in Mountain View, CA 94043 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is incorporated herein by reference

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252 | Receipt, distribution and possession of child pornography |
| 18 U.S.C. § 2251(a) | Attempted Production of child pornography |
| 18 U.S.C. § 2422(b) | Enticement |

The application is based on these facts:

See attached Affidavit of Special Agent Justin Sebens, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Justin Sebens, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _18 Feb 2015_

_____
*Judge's signature*

City and state: SEATTLE, WASHINGTON

JAMES P. DONOHUE, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Special Agent Justin Sebens, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), assigned to the Assistant Special Agent in Charge (ASAC), Blaine, Washington, field office.  I have been employed as an HSI Special Agent since December 2009.  Prior to this assignment, I was a United States Naval Intelligence Officer.  HSI is responsible for enforcing the customs and immigration laws and federal criminal statutes involving the sexual exploitation of children under Title 18, United States Code, § 2251 et seq.  As part of my duties, I investigate criminal violations relating to child exploitation and child pornography.

2.      I am a graduate of the HSI Special Agent Training Program and Criminal Investigator Training Program located at the Federal Law Enforcement Training Center in Glynco, Georgia.  My training included courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants.  I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography in numerous forms of media, including media stored on digital media storage devices such as computers, iPhones, etc.  I am an affiliate member of the Seattle Internet Crimes Against Children (ICAC) Task Force in the Western District of Washington, and work with other federal, state, and local law enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children.

3.      I am familiar with and have participated in a variety of investigative techniques including but not limited to:  surveillance, interviewing of witnesses/suspects, and the execution of search and seizure warrants that involved child exploitation and/or child pornography offenses, and the search and seizure of computers and other digital devices.

4.      For purposes of conducting this investigation and drafting this Affidavit, I have spoken to other agents, law enforcement officials, and other interested individuals about this investigation.  The statements contained in this Affidavit are based on my personal knowledge or information that has been provided to me directly or indirectly by other investigating agents with

personal knowledge of the events and circumstances described herein, and on my experience and training. I also have reviewed files and reports provided by other law enforcement agencies and public databases and records. Because this Affidavit is submitted for the limited purpose of charging a criminal violation, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are relevant to the determination of probable cause.

5.     I make this affidavit in support of an application for a search warrant for the following:

a.     The content and records associated with the account kcreative2014@gmail.com (the "TARGET ACCOUNT"), which are stored at premises owned, maintained, controlled, or operated by Google Inc. ("Google"), an electronic communications services and remote computing services provider headquartered at 1600 Amphitheatre Parkway Mountain View, California 94043. See Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government records and other information in its possession pertaining to the subscribers or customers associated with the account referenced in this affidavit and further in Attachment A, including the contents of the communications.

6.     The statements in this affidavit are based on my personal observations, my training and experience, my investigation of this matter, and information obtained from other agents, law enforcement officers, and witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

7.     I have set forth the facts that I believe necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252 (receipt, distribution and possession of child pornography), 2251(a) (production of child pornography) and 2422(b) which prohibits any person from using a facility and means of interstate or foreign commerce, the internet and a cellular telephone, to attempt to knowingly persuade, induce, entice, or coerce an individual who had not yet attained the age of 18 years, to engage in sexual activity for which a person can be criminally charged.

## DEFINITIONS AND TECHNICAL BACKGROUND

10.     The following definitions apply to this Affidavit and its Attachments:

a.       The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

b.       The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

c.       The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

d.       The term "computer," as defined in 18 U.S.C. §1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

e.       The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where 1) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; 2) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or 3) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

f.       The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings,

cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

     g.     "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

     h.     "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

     i.     "Domain names" are common, easy to remember names associated with an IP address. For example, a domain name of "www.usdoj.gov" refers to the IP address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period.

     j.     "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

     k.     A "Preservation Letter" is a letter governmental entities may issue to Internet providers pursuant to 18 U.S.C. § 2703(f) to ensure that the Internet Providers preserve records in its possession. The preservation of such records is necessary given the dynamic nature of digital records that may be deleted.

     11.     I have had experience in the investigation of computer-related crimes. Based on my experience, knowledge, and information provided to me from other agents, I know the following:

a.      Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized.  It has also revolutionized the way in which child pornography collectors interact with each other.  Child pornography formerly was produced using cameras and film (either still photography or movies.)  The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images.  As a result, there were definable costs involved with the production of pornographic images.  To distribute these on any scale also required significant resources.  The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public.  The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls.  Any reimbursement would follow these same paths.

b.      The development of computers has added to the methods used by child pornography collectors to interact with and sexually exploit children.  Computers and the Internet serve multiple functions in connection with child pornography.  These are production, social networking, communication, distribution, research of criminal tradecraft, and storage.

c.      Child pornographers can now transfer photographs from a camera onto a computer-readable format.  With the advent of digital cameras, the images can now be transferred directly onto a computer.  A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.  Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem.[1]  Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

d.      The computer's ability to store images in digital form makes the computer itself an ideal   repository for child pornography.  The size of the electronic storage media (commonly

_____

[1] The File Transfer Protocol (FTP) is a protocol that defines how to transfer files from one computer to another.  One example, known as "anonymous FTP," allows users who do not have a login name or password to access certain files from another computer, and copy those files to their own computer.

referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store hundreds of thousands of images at very high resolution.

    e.        The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

    f.         Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as AOL Inc., Yahoo! and Google, Inc., among others. The online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

    g.        As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

    12.     In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the general public. Google allows subscribers to obtain email accounts at the domain names "@gmail.com" like the Target Account listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and un-retrieved email) and information concerning subscribers and their

use of the Google's services, such as account access information, email transaction information, and account application information.

13.     **Email and Data Storage**:  In general, an email that is sent to a subscriber of Google is stored in the subscriber's "in-box" on Google's servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on Google's servers indefinitely.  The user can move and store messages in personal folders such as a "sent folder."  In recent years, Google and other ISPs have provided their users with larger storage capabilities associated with their users' email account.  ISPs, including Google, provide users with as much as multiple gigabytes of online storage space.  Based on my experience and conversations with other law enforcement officers with experience in executing and reviewing search warrants of email accounts, I have learned that search warrants for email accounts and computer systems have revealed stored emails sent and/or received many years prior to the date of the search.  Google also provides subscribers with various other associated products and services in connection with their accounts, including chat programs, photo and video sharing platforms and other services or social media programs.

14.     **Data Retention**:  When the subscriber sends an email, it is initiated at the user's computer or other internet access device, transferred via the Internet to Google's servers, and then transmitted to its end destination.  Google often saves a copy of the email sent.  Unless the sender of the email specifically deletes the email from Google's servers, the email can remain on the system indefinitely.

15.     **Email Messages**:  A sent or received email typically includes the content of the message, source and destination addresses, the date and time at which the email was sent, and the size and length of the email.  If an email user writes a draft message but does not send it, that message may also be saved by Google but may not include all of these categories of data.

16.     **Online Data Storage**:  A subscriber of Google can also store files, including emails, address books, contact or buddy lists, calendar data, pictures, and other files on servers maintained and/or owned by Google.  Subscribers to Google might not store on their home computers copies of the emails stored in the Target Account.  This is particularly true when they access the Target Account through the web, or if they do not wish to maintain particular emails or files in their residence.  In essence, a subscriber's email box has become a common online data storage location for many users.  This is particularly true when they access the Target

Account through the web, or if they do not wish to maintain particular emails or files in their residence.

17.     **Identifying Information**: In general, email providers such as Google ask each of their subscribers to provide certain personal identifying information when registering for an email account. This information could include the subscriber's full name, physical address, telephone numbers and other identifiers, such as alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

18.     **Transactional Information**: Email providers typically retain certain transaction information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website), and other log files that reflect usage of the account. In addition, email providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

19.     **Technical Support**: In some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the providers support services, as well as records of any actions taken by the provider or user as a result of the communications.

20.     **Attribution Evidence**: In my training and experience, evidence of who was using an email account may be found in address books, calendars, contact or buddy lists, emails in the account, and attachments to emails, including pictures and files.

## SUMMARY OF THE INVESTIGATION

21.     On January 15, 2015, at approximately 11:23 a.m., I placed an advertisement in the "casual encounters" sub-section of the personal ads on the Craigslist.com website, in the Craigslist site that specifies the geographic area of Vancouver, British Columbia, Canada. Craigslist is a commercial classified advertisements website with sections devoted to jobs,

housing, personals, for sale, items wanted, services, local events and discussion forums. Craigslist offers local services by specifying geographic areas for the services posted on the website. Because the website is hosted on the internet, it can be accessed and used by any individual with access to the internet anywhere in the world. Craigslist is also known as "Cl" or "CL".

22.     The advertisement I placed was titled "Crazy and very young. Looking to explore myself-w4m." The body of the ad read as follows:

> I'm a bit young and want to learn some new things. I have never experienced the things I
> want to. I am real and live in Burlington, WA. I like to go to the outlet stores at Tulalip!!

23.     On January 15, 2015, at approximately 12:26 p.m., an individual identifying himself as "Jumbo Smith," later identified as KULDIP SINGH MAHAL, responded to the advertisement via Craigslist using an anonymizer. Individuals using Craigslist can choose to anonymize their email address when using Craigslist. If a user selects this option, a communication will display a craigslist email address similar to one of the following, instead of the user's actual email address: xxxxx-1234567890@reply.craigslist.org. Craigslist will then relay any messages sent to that address to the user's email address, which obscures the sender's email address.

24.     Attached to the response sent by "Jumbo Smith" was a photograph of KULDIP SINGH MAHAL's naked torso and arms. The text of the email is as follows:

> jumbo smith<86486db2c9e23be4a7c2fa5e99b2c0b3@reply.craigslist.org>
> Hi there
> i really like what i read in your ad, our wants, needs are the same. My schedule is very
> flexible to chat, flirt and have hot fun. i would love to take you for a ride to outlet stores
> and teach you new things. I am sending you pic of my body to show that i am fit and in
> shape...............;-) I am located in Bham and can drive to you......;-) I am very sexual,
> high drive, heavy cummer 44, 5'10, 160 lbs, silver fox, brown eyes, well educated
> professional, well traveled, and handsome man. I take pride in my looks, good tongue,
> fingers, clean shaven, trimmed down below, active, explore, kiss, oral, anal, cuddle, lead
> an active life style, fit, and love running, playing/coaching sports.
> I am attentive, passionate, respectful, sane, clean, healthy, non smoker, casual
> drinker, d/d (tested clean recently) free, fixed, very discreet and expect the same in return.

I am looking for NSA or ongoing casual/fwb relationship with someone who is open minded and willing to try/chat about anything once is lot more important than the looks.

I hope you are real and want to get to know someone open, and real.

If any of this interest you please email and letting me know your thoughts......., willing to exchange face pics, with yours..............:-) cheers

25.     Based on my training and experience I know that "fwb" as used above means "friends with benefits" and refers to a non-committed sexual relationship, and that "NSA" means "no strings attached" and also refers to a non-committed sexual relationship.

26.     On January 15, 2015, at approximately 2:43 p.m., I contacted KULDIP SINGH MAHAL utilizing an undercover (UC) email account and portrayed myself as a 12 year old female named Krissy Jennings ("KJ").  My communication throughout this investigation with KULDIP SINGH MAHAL consists of shorthand, intentional misspellings, emoticons, and errors in punctuation and capitalization, to reflect a juvenile emailing and texting.  My response was as follows:

Geez, sorry it took me so long to get back to u.  I posted that thing on craigslist and my inbox went crazy!  I decided to write back because u actually put some effort into it :)

I'll send a pic in a bit but just wanted to get to know u a little first, girls gotta be careful!!

i'm turning 13 soon but am super mature for my age.  R U from Bellingham? or just come here a lot?

27.     On January 15, 2015, at approximately 3:18 p.m.,  KULDIP SINGH MAHAL responded to my email account utilizing the Craigslist anonymizer:

no worries for taking so long.  Cl is like that, lots of fake spam on there, people
just   play games and waste other peoples time.  What would you  like to know?
what exactly are you looking for on CL?  I am a short drive from Bellingham and
come there often. cheers

28.     On January 15, 2015, at approximately 3:22 p.m., I responded to KULDIP
SINGH MAHAL via the UC email account.  The purpose of this response was to confirm that
KULDIP SINGH MAHAL was fully aware of "KJ's" age:

first off, i just want to make sure ur cool with my age, some guys get freaked out.  Other
than that........im just excited to hear what u want to do!  after a couple more emails i can
probably give u my number, easier to text.

29.     On January 15, 2015, at approximately 3:26 p.m., KULDIP SINGH MAHAL
responded to my email account utilizing the Craigslist anonymizer:

Hi
i am cool with your age if you just want to chat.  It is all up to you what you want to do
and love to hear about it.  I am still waiting for your pic…;-)
cheers

30.     On January 15, 2015, at approximately 5:07 p.m., after initial email exchanges,
the primary means of communication between me acting in an undercover capacity as KJ and
KULDIP SINGH MAHAL transitioned to Google Voice, which is a Voice Over Internet
Protocol (VOIP) texting/phone service owned by Google.  VOIP allows voice and text
communications over the internet and can include both interstate and international
communications.  VOIP services, and specifically Google Voice, are available on smartphones
and computers.  KULDIP SINGH MAHAL also used the **TARGET ACCOUNT** to email me
on a regular basis.

31.     For ease of reference, "KJ" as used in this affidavit refers to my communications
acting in an undercover capacity as the 12 year old KJ.  KJ provided KULDIP SINGH MAHAL
with the undercover telephone number.  KULDIP SINGH MAHAL sent the initial text message

which then indicated his telephone number as 724-257-1010. The text function was primarily used in this investigation to communicate with KULDIP SINGH MAHAL.

32.     On January 16, 2015, KULDIP SINGH MAHAL indicated a desire to keep communications between himself and "KJ" confidential. The following is an excerpt from a text message conversation.

Jan 16, 2015

MAHAL: Ok, if that is the case, you can ask me anything amd i will teach you. You have to promise me to keep this only between us, no matter what.

MAHAL: You can't even talk to your friends about it, promise?

KJ: Promise

MAHAL: Cross your heart? Promise?

33.     Beginning on January 15, 2015, communication with KULDIP SINGH MAHAL included topics of a sexual nature and sexual innuendo; however, on January 16, 2015, at 4:23 p.m. KULDIP SINGH MAHAL initiated overt sexual conversation by sending KJ an email from the TARGET ACCOUNT," that detailed specific sexual acts KULDIP SINGH MAHAL wanted to perform with KJ:

My fantasy

I left you home alone and went to work, you know that i usually come back home in the evening, but one day i came home early, unexpectedly. where i find you in my bed, all naked and playing with your nice firm titties, and nice little, tight, pink flower of yours with your finger, and moaning and groaning. i quietly walk in the en suit bathroom from where i stand and watch you, and start to get my cock hard, seeing you have fun and pussy juices started to flow. Realizing that you are ready for the picking, and turned on by my smell, i come out and ask if you enjoy being in my bed, you say, yes daddy, i ask, what else would you like to enjoy of mine, you whisper, ur cock. being the good daddy i am, i whip out my cock and put it in your already wide open mouth while you still finger

yourself......grab your hair and pull you towards me and gag you with my
co....want to know more get back to........

34.     As time progressed, text messages and emails received from KULDIP SINGH
MAHAL continued to increase in their sexual content and graphic nature.  The following email
from the TARGET ACCOUNT is representative examples of these communications:

    1)     Email received by KJ from KULDIP SINGH MAHAL on January 20, 2015, at
1.19 p.m., from the TARGET ACCOUNT:

> hi Krissy babe
> This is what i would like to do and let you suck...........69, and me licking your
> kitty at the same time.........next i push you down on to the sofa, and you resist
> my advances, kiss you long and hard forcefully while playing with your hard,
> erect nipples............than work my way down with my mouth, teasing and
> sucking on your nipples, painting circles all around them and you arc your back
> try to push your tits into my mouth, but i hold your arms down, tie them up, not
> letting you have what you want........mmmmm i continue my way down to your
> lower tummy, pubic area but without touching your lower lips, intentionally let
> my chin rub your sweet and warm, moist spot, full with anticipation, you start to
> deep breath and getting impatient with me and stating to beg me to let you go but
> deep down you wish to be licked and give you my cock up the ass.......and i deny
> you, pin you down with my legs, slap your ass while finger fucking your pussy, to
> get you relaxed and and slightly choking you until your eyes tear up to push you
> over the edge.  i am getting hard under my desk.........want more let me
> know.......
> waiting for your sexy pics..;)
> cheers

35.     Throughout the correspondence with KJ, KULDIP SINGH MAHAL made
numerous requests that KJ send him nude photographs, to include images of her breasts and

vagina.  In addition to the instances set forth above, the following are representative examples of these requests:

<u>January 17, 2015</u>

MAHAL: How tight is your pussy? Are you shaved or has a peach fuzz...;-)

KJ: I haven't even gotten my period yet, and my pussy is still bare

MAHAL: Where is you mum now? I am free and alone tonight, just saying...lol

KJ: How do u want me to measure tightness?

MAHAL: Mmmm, really no period, so why are you sexyally active, and horny? Love bare pussy......

MAHAL: How many fingers can you take in it?

MAHAL: Show me on a pic and I will tell you how tight you are, all in experience...lol

<u>January 23, 2015</u>

MAHAL: First experiences, you must take time with..,,,,i so want yo see your pussy and titties...,...

MAHAL: Please do something to send, some how...,desperately impatients...:-(

36.     KULDIP SINGH MAHAL also emailed numerous photographs to KJ.  On January 20, 2015, at approximately 4:00 p.m., KULDIP SINGH MAHAL emailed KJ a photograph of his ejaculate on a paper towel from the **TARGET ACCOUNT**.  The email was titled "Cum load shot."  The body of the email read:  "Since you were asking, I thought I'd rub

one out and show you how big and thick it is... Here it is ¾ of it, rest went in the sink while trying to catch it, too much pressure....lol Enjoy". On January 21, 2015, at approximately 3:43 p.m., KULDIP SINGH MAHAL emailed KJ a photograph of his penis and ejaculate on a paper towel from the **TARGET ACCOUNT** and described in the email having sex with a female. KULDIP SINGH MAHAL asks KJ if she would prefer his penis in her vagina or anus.

37.     On January 23, 2015, KULDIP SINGH MAHAL sent KJ pictures of two dildos from the **TARGET ACCOUNT**.  In the email KULDIP SINGH MAHAL stated: "Look at those studs on the dildo, and it has very strong vibrations, it will tickle your ass/pussy real good.  Just imagine the pleasure with my cock in one hole and dildo in the other . . ."

38.     Throughout the time spent communicating with KJ, KULDIP SINGH MAHAL indicated his desire to meet "KJ" in person; the first of which occurred on January 16, 2015, the day after KULDIP SINGH MAHAL and KJ began communicating:

January 16, 2015

MAHAL: When is your mom away and u r alone?

KJ: My mom comes home around 4 or 430

MAHAL: When r u home alone ?

MAHAL: What would you like to try or learn?

KJ: I'm home alone most of the day when I'm not at school. mom works at night sometimes too

MAHAL: Really, nice, that would work. Would you feel comfortable meet

KJ: Meeting?

MAHAL: Yes, meeting. I am going to be in Bellingham tonigjt. My schedule is very flexible.

KJ: I live in Burlington

KJ: I think that's like a few miles south of Bellingham

MAHAL: Yes, it is. I know...;-)


39.     On January 27, KULDIP SINGH MAHAL discussed where to meet up with  KJ:

Jan 27, 2015

KJ: Thnx :-) u said u called around to different places we could go, where did u call??

MAHAL: Silly, that is just me everyday, I've been myself with you, real and honest, straight up...,,,:-)

KJ: I just want to make sure none r gross!!

MAHAL: Few place around Bellingham, some hotels and cabins to see what was available?

KJ: Cabins!!! That's sounds romantic :-)

MAHAL: lol, yes, but they are hard to book. Has to be planned well ahead of time......

MAHAL: ....found one in Alger for 100 per .....not much around there...

KJ: We can figure something out :-)

KJ: What about ur place??

MAHAL: I can't host at my place

MAHAL: That is why I was asking you when your mom is at work at night....

KJ: Oh, well next Tuesday I have that half day and my mom works late! :-) but we can meet in that park and then walk to my house

MAHAL: That may work...:-)

KJ: I liked it when u said on the phone ur heart races when we text, is it racing now ???????!!!!!!!'n

MAHAL: How early are you available on Tuesday?

MAHAL: Yes, it is thumping like crazy and my cock is rock hard for you....again....lol

KJ: I can be there like at 1pm

MAHAL: When I chat with you, I drop everything and give you all of my attention.....

KJ: I don't want u in trouble at work!! ;-)

KJ: Usually on Tuesday she's home like around 9 or 10

MAHAL: Don't worry, no one know where i am in the building when mot in my office.....

KJ: Nice :-)

MAHAL: I have to leave by 4:30pm the latest on tuesday....to make it back st home on time...,:-)

MAHAL: I will see if I can arrange something to stay longer.....:-)

KJ: Ok :-) !!!

MAHAL: Do you want me to stay longer?

KJ: Sure if u can!! But if u cant that's ok,

MAHAL: Just make sure that ur mom is not coming home any early.....

KJ: Ok. U know I'm sneaky!!

MAHAL: ....don't want to get beaten up by an angery mother......lol They can be really vicious ....haha

40.     On January 29, 2015, MAHAL confirmed with KJ the plans to meet up in Burlington, Washington:

January 29, 2015

MAHAL: So are we on for next Tuesday? Should i book day off of work????!

KJ: Yeah!

MAHAL: Ok, u not going to back out?

KJ: No, I'm excited

KJ: :-)

MAHAL: Me too, just making sure 😊

KJ: How long do u think u can stay?

MAHAL: I can stay as long as you want me to....or handle gor(-¤

KJ: Ok!!

MAHAL: Leave shortly before your mom cums home....

KJ: Cool, so like around 9 then??

MAHAL: She comes home at 10pm for sure?

KJ: Yeah

MAHAL: If she comes home early and i am still there, what are we going to tell her????

MAHAL: Something to think about...,

KJ: She usually calls me to tell me she's on her way home,

MAHAL: Okay, might have to think about an escape route for emergency, like my teen days....lol

**B.      Travel and Arrest**

41.     KJ agreed to meet with KULDIP SINGH MAHAL on February 3, 2015, at Skagit River Park Playfields, in Burlington, Washington.

42.     On February 3, 2015, at approximately 12:05 p.m., a white four-door Toyota Camry with British Columbia license plate 535-GXR registered to KULDIP SINGH MAHAL arrived at Skagit River Park Playfields.  KULDIP SINGH MAHAL was taken into custody at approximately 12:10 p.m.

43.     At approximately 12:18 p.m. I read KULDIP SINGH MAHAL the Miranda Rights, after which KULDIP SINGH MAHAL stated he understood his rights.  I initiated an interview thereafter with the assistance of SA Toby Ledgerwood.  KULDIP SINGH MAHAL confirmed his current residence is in Surrey, British Columbia.  I asked KULDIP SINGH MAHAL if he was the individual communicating with KJ, KULDIP SINGH MAHAL stated that he was not.  I then dialed the telephone number used by KULDIP SINGH MAHAL to communicate with KJ, 724-257-1010; the cellular telephone located on KULDIP SINGH MAHAL's person during the course of arrest vibrated, indicating an incoming call.  KULDIP SINGH MAHAL then stated he was in fact the person communicating with KJ and was at the park to meet KJ.

44.     KULDIP SINGH MAHAL confirmed that the TARGET ACCOUNT: "kcreative2014@gmail.com" is his email and he used it to communicate with KJ.  Additionally, KULDIP SINGH MAHAL confirmed that he established the telephone number 724-257-1010 through "Talkatone" to get free text messaging in order to communicate with KJ and had the "Talkatone" number ported to his cellular telephone.

45.     KULDIP SINGH MAHAL stated he first met KJ by responding to an ad on Craigslist.com and was looking to establish a friendship.  When I asked what he planned to do with KJ if they had met, KULDIP SINGH MAHAL responded that he was going to take KJ to a Wendy's restaurant for lunch, as a friend, and explain to her that meeting people on the internet can be very dangerous.

46.     I read aloud to KULDIP SINGH MAHAL a random selection of sexually explicit text messages KULDIP SINGH MAHAL had sent KJ and asked him to explain why he had sent them if his only purpose of meeting KJ was to establish a friendship.  KULDIP SINGH MAHAL stated "I said the things I thought she wanted to hear, I don't want to go through with them, I had no intention to do those things."  I asked KULDIP SINGH MAHAL if he had emailed KJ the pictures of the ejaculate and penis; after an initial denial, he confirmed that he had emailed KJ a photograph of his ejaculate and a photograph of his penis and ejaculate.

47.     I asked KULDIP SINGH MAHAL if he recalled the telephone conversation he had with KJ on January 26, 2015, to which MAHAL indicated he had never spoken with KJ. I then played the recording of said telephone conversation and after approximately 30 seconds KULDIP SINGH MAHAL stated he did remember that telephone call and he did speak with KJ, he then asked me if I could "move on."

48.     Before the interview had begun, SA Daniel Gleckman had asked KULDIP SINGH MAHAL for consent to search his car. KULDIP SINGH MAHAL refused to consent. During the interview, I asked KULDIP SINGH MAHAL if he brought any items such as condoms, dildos, or other sex toys to the meeting with KJ. KULDIP SINGH MAHAL stated he had not brought any of the items listed with the exception of condoms which KULDIP SINGH MAHAL explained that he had used with his wife recently. I informed him that his car was going to be seized and searched pursuant to a search warrant, and I asked if there was anything Agents should be aware of in the car, including any sex toys. KULDIP SINGH MAHAL then explained that there were dildos in the car but only because he used them with his wife on his birthday, January 31st.

49.     Based on statements KULDIP SINGH MAHAL had made in conversations with KJ, I asked if he was a soccer coach. KULDIP SINGH MAHAL stated he was not a soccer coach and that he had "made it up" in the text messages to KJ. A short time later, I was able to confirm that KULDIP SINGH MAHAL was a soccer coach with a Surrey United under 16 team under the name "Kelly Mahal." I then stated "Surrey United" to KULDIP SINGH MAHAL at which time he nodded and admitted that he had initially lied to me and confirmed that he was indeed a soccer coach.

50.     I asked KULDIP SINGH MAHAL if he ever requested that KJ email KULDIP SINGH MAHAL pornographic images of herself, to include her breasts and vagina. KULDIP SINGH MAHAL denied doing so, at which time I read aloud from the text message log two examples of KULDIP SINGH MAHAL asking KJ to provide him photographs of her breasts and vagina. KULDIP SINGH MAHAL then shook his head and stated "what can I say; you have it all in front of you." KULDIP SINGH MAHAL was referencing the email and text logs that document the conversations between KULDIP SINGH MAHAL and KJ that I was holding at the time of the interview. The interview concluded at approximately 1.15 p.m.

51.     Subsequent records checks through United States Customs and Border Protection indicate KULDIP SINGH MAHAL, a citizen of Canada, entered the United States on February 3, 2015, at 9.08 a.m.

52.     I know that in Washington it is a crime for a person to have sexual intercourse with a child who is less than fourteen years old who is not married to the perpetrator and the perpetrator is a least 36 months older than the victim, pursuant to RCW 9A.44.076 (Rape of a Child in the Second Degree).

53.     **Child Pornography Producers and Collectors:** Based upon my knowledge and experience in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain behavioral characteristics common to individuals who produce, distribute, receive, access with intent to view and possess child pornography:

54.     They may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

55.     Persons who produce, distribute, receive and possess child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

56.     Those who distribute and possess child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

34.     **Information Sought and Things to be Searched and Seized:** I anticipate executing the warrant involving the Google Inc. account under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the

warrant to require Google to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.

35.     **Email account**:  Based on my knowledge and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in control of Google there exists evidence of a crime, contraband and/or fruits of a crime.  Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the Target Account described in Attachment A was used to persuade, induce, entice, or coerce an individual who had not yet attained the age of 18 years, to engage in sexual activity and the attempted production of child pornography.   Accordingly, a search warrant is requested.

34.     **Jurisdiction**:  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(I).

Justin Sebens
Special Agent
Homeland Security Investigations

Subscribed and sworn before me this 18th day of February, 2015.

JAMES P. DONOHUE
United States Magistrate Judge
Western District of Washington

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

This warrant applies to information associated with the Google Inc. email account **kcreative2014@gmail.com** which is stored at premises owned, maintained, controlled, or operated by Google Inc., an electronic communications services and remote computing services provider headquartered at 1600 Amphitheatre Parkway Mountain View, California 94043.

ATTACHMENT A - 1

## ATTACHMENT B

### Particular Things to be Seized

I.       **Information to be disclosed**

To the extent that the information described in Attachment A is within the possession, custody, or control of **Google, Inc.**  Google is required to disclose the following information to the government for the accounts or identifiers listed in Attachment A (the "Target Account"). Such information should include the below-described content of the subject account:

a.       Subscriber Information, including the name and location, supplied by the user at the time of registration, the date the account was created and all of the services of Google used by each Target Account.

b.       Records of user activity for each connection made to or from the Target Accounts, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses, and any telephone, instrument or other unique identifiers collected by Google and associated with the Target Accounts;

c.       All information about each communication sent or received by the Account, including emails and chats, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers);

d.       The contents of all emails and chats stored in the account, including copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email, and any and all attachments;

e.       Any deleted emails, including any deleted information described in subparagraph "d," above;

f.       All internet search records, including the specific terms searched in association with the Target Account, the dates, times and time zones of all searches, the IP addresses or telephone or instrument identifying numbers associated with those searches, and any data related to the results of the searches associated with the Target Account and the Target Account's use of any search results;

ATTACHMENT B - 1

g.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of services utilized and/provided to mail.com customers, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

h.     All records or other information stored by an individual using the accounts, including address books, contact and buddy lists, calendar data, pictures, videos and other data files;

i.     All local and long distance telephone connection records;

j.     All telephone or instrument numbers associated with the Target Account (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

k.     All wire and electronic communications held or maintained by Google at any time in association with telephone communication services, including but not limited to text or SMS messaging and stored audio communications, for the use of or associated with the Target Account; and

l.     All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken.

m.     All data stored by the Target Account, including cloud data storage.

## II.     Information to be seized by the government

1.     All information described above in Section I, including correspondence, records, documents, photographs, videos, electronic mail, chat logs, and electronic messages that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2251(a) and 2422(b), including, for each account or identifier listed on Attachment A, information pertaining to the following matters, including attempting and conspiring to engage in the following matters:

ATTACHMENT B - 2

      a.      Any person sexually exploiting a child or producing child pornography, in violation of 18 U.S.C. § 2251 and 2422;

      b.      Any person showing or evidencing a sexual interest in minors or a desire or motive to collect or distribute visual depictions of minors engaged in sexually explicit conduct or child pornography;

      c.      Records, documents, writings, and correspondence with others pertaining to the production, possession, receipt, distribution, transportation or advertisement of visual depictions of minors engaged in sexually explicit conduct or child pornography.

      d.      Any person knowingly transferring obscene matter to another individual who has not attained the age of 16 years, knowing that the other person has not attained the age of 16 years.

      2.      Credit card and other financial information including but not limited to bills and payment records;

      3.      Evidence of who used, owned, or controlled the accounts or identifiers listed on Attachment A;

      4.      Evidence of the times the accounts or identifiers listed on Attachment A were used;

      5.      Passwords and encryption keys, and other access information that may be necessary to access the accounts or identifiers listed on Attachment A and other associated accounts.

ATTACHMENT B - 3